GEORGE W. YOUNG, EXECUTOR, *v.* WILLIAM J. STEVENS.

As a general rule, insanity may be pleaded, or given in evidence, in bar to an action
founded either upon an executory or executed contract. It is for the jury, under
suitable instructions of the court, to find its existence, and to determine its effects
upon the contract.

Where a person, apparently of sound mind, and not known to be otherwise, enters into
a contract for the purchase of property, which is beneficial to the purchaser, and
otherwise fair and *bona fide*, and which has been fully completed, paid for, and en-
joyed, and cannot be restored so as to put the parties in *statu quo*, such contract will
not afterwards be set aside either by the lunatic or his representative.

The representative will not be permitted to rescind the contract of the insane or imbe-
cile without first showing the practice of fraud, undue advantage or other imposition
in the grantee, for his labor and services have entered largely into the consideration
of the contract, and they cannot be restored, nor can compensation be easily made
therefor.

Where fraud be not distinctly shown, the grantee will be entitled to compensation for
any actual benefits or necessaries furnished to the insane party.

ASSUMPSIT on promise to the testatrix.   The counts relied upon were
upon account annexed, amounting to $695.50, a copy of which makes
part of the case, and a count for use and occupation.

The cause was tried upon the general issue, and, from the opening,
the plaintiff's case was, that, shortly before the decease of the testatrix,

who had a life interest in a small farm and owned certain stock and grain thereon, the defendant entered upon the farm and took possession of it together with such stock and grain, and occupied the house upon it, the testatrix living there also with the defendant and his family, and all living together; that the defendant did this under a contract in writing between him and the testatrix, of May 4, 1865, by which she leased to him the farm aforesaid during her life, and conveyed to him the neat stock and sheep absolutely, the defendant agreeing on his part to support the testatrix during her life; that the defendant took possession of the farm and stock, claiming a right to them by virtue of this contract, and continued to hold them until the death of the testatrix, who also continued to live in his family till her death.

Whereas, as alleged in the opening, the contract aforesaid was wholly void by reason of the mental imbecility of the testatrix, which rendered her incapable of making it, and upon that ground the plaintiff contended that no title passed to the defendant in any of the property. In regard to some of the property not embraced in this contract, but described in the account annexed, the plaintiff's case was that defendant, on taking possession of the farm, took possession also of this property, and converted it to his own use, there being no sale of it to him, or any evidence of her assent to his taking it, she being in fact most of the time sick.

In respect to the charge for board of defendant and family, the opening was, that they lived in the house above described during the time mentioned in the account annexed, the testatrix living with them, the defendant using in the family the grain, pork and potatoes described in the account, without any contract in respect to them with the testatrix, or any assent or dissent by her to such use.

Upon the case as offered to be proved, the court ordered a nonsuit, and plaintiff excepted. The questions of law arising on this case were reserved for the consideration of the whole court.

[COPY OF ACCOUNT ANNEXED TO WRIT.]

WILLIAM J. STEVENS,
          To ELIZA YOUNG,                              DR.

| | | |
|---|---|---:|
| 1864, Sept. 1. | For board of self 2 weeks, at $3.50, | $7 00 |
| 1865, July 24. | 2 cows, | 150 00 |
| | 1 heifer, | 75 00 |
| | 1 pair two year old steers, | 60 00 |
| | 2 yearling cattle, | 40 00 |
| | 1 calf, | 10 00 |
| | 2 tons hay, | 36 00 |
| | 8 yearling lambs, | 40 00 |
| | 5 bushels wheat, at 1.50, | 7 50 |
| | 150 lbs. pork, at 25 cts., | 37 50 |
| | 40 bushels potatoes, at 25 cts., | 10 00 |
| | 20 bushels oats, at 1.00, | 20 00 |

1865, July 24.  For board of your family of six persons,
from April 20, 1865, to July 25,
1865, 13 1-2 weeks, at 15.00,  202 50

$695 50

*Wheeler*, for plaintiff.

*Cushing*, for defendant.

Nesmith, J.  The plaintiff, under his first count, seeks to recover for two weeks' board in 1864, as furnished by his testatrix to the defendant, for which the sum of $7 is charged, and also for sundry articles of personal property, such as provisions, &c.  Probably some of these may be due, and may be recovered under plaintiff's first count, as having been delivered to the defendant under an express or implied contract, binding the defendant to pay for them.

The main dispute involved in the case arises out of the special contract of the testatrix, as made with the defendant on the 4th day of May, 1865.  It is understood that, under this contract, the defendant agreed to take the lands in which the said Eliza Young had a life estate, also the stock on her farm, and to support the said Eliza during her natural life ; and according to the requirements of said contract, the defendant now claims the full performance, the said Eliza having deceased.  On the other hand, the plaintiff claims that no title passed under this contract to defendant by reason of the incapacity of said Eliza, she at the time laboring under mental imbecility.  Wherefore, the plaintiff claims that the defendant should pay for the use of the premises enjoyed by him, and for the value of the stock taken under the written contract, and for the board of self and family during its existence ; in short, that the whole of said written contract should be regarded as rescinded.  It will be seen that the ruling of the court stands upon the plaintiff's own statement of his case, and it will be presumed to be stated as strong in his favor as the facts will justify.

The rules, definitions, and limitations, as laid down by Judge Bell, in *Dennett* v. *Dennett*, 44 N. H. 531, are to be regarded as safe for our guidance, as applicable to the subject of mental imbecility or insanity, when existing in either party to executory or executed contracts. Every person may be deemed of unsound mind, who has lost his memory and understanding by reason of old age, sickness, or other accident, so as to render him incapable of transacting his business, and of managing his property.

As a commentary upon this comprehensive general rule, we may remark that the common law seems not to have drawn any nice discriminating line by which to determine how great must be the imbecility of mind to render a contract void, or how much intellect must remain to uphold it.  *Jackson* v. *King*, 4 Cow. 216.  When it appears that a grantor had not strength of mind and reason sufficient to understand the nature and consequences of his act in making a deed, it may be avoided.

on the ground of insanity. In other words, a man, by the bare execution of a written instrument, does not make it his deed, if at the time he was so weak in mind as to be incapable of understanding it, if explained to him, or the effect of the act he is about to perform. The question, then, in cases where incapacity to contract from defect of mind is alleged, is not whether a person's mind is impaired, nor whether he is afflicted by any particular form of insanity, but whether the powers of his mind have been so far affected by his disease as to render him incapable of transacting business like that in question. Weakness of understanding is not of itself any objection to the validity of a contract, if the capacity remains to see things in their true relations, and to form correct conclusions. The doubtful and uncertain point at which the disposing mind disappears, and where incapacity begins, can be ascertained only by an examination of all the circumstances of each particular case, to be duly weighed and considered by the court and jury; and in determining the question, the common sense and good judgment of this tribunal must be mainly relied on.

The familiar rule of evidence is adopted here that every man is presumed to be sane until the contrary appears, and the burden of proof is on the party who asserts the want of capacity. *Pettes* v. *Bingham,* 10 N. H. 514. Nor is there any doubt as to the rule of practice here, which is that insanity may be either pleaded or given in evidence, as a bar to an action founded either upon an executory or executed contract. *Burke* v. *Allen,* 29 N. H. 106; *Dennett* v. *Dennett, ante; Leaver* v. *Phelps,* 11 Pick. 304; *Rice* v. *Peet,* 13 Johns. 543; *Thompson* v. *Leach,* 3 Mod. 310. In England, we have the recent case of *Molton & Wife, Admin'x* v. *Camroux,* 2 Excheq. 500, wherein Chief B. Pollock has ably investigated the question, when, and how far insanity or lunacy may be an answer to a complete or executed contract, and under what circumstances such a contract may not be rescinded. Pollock says: "We are not disposed to lay down so general a proposition as that all executed contracts, *bona fide* entered into, must be taken as valid, though one of the parties be of unsound mind. We think, however, we may safely conclude that when a person, apparently of sound mind, and not known to be otherwise, enters into a contract for the purchase of property which is fair and *bona fide,* and which is executed and completed, and the subject matter of the contract has been paid for and fully enjoyed, and cannot be restored, so as to put the parties in *statu quo,* such contract cannot be afterwards set aside, either by the alleged lunatic or those who represent him." The case where this doctrine was held was assumpsit, brought by the representatives of the deceased person, Thomas Lee, to recover back certain annuities which had been purchased by said Lee in his lifetime, without the knowledge on the part of the officers of the annuity society of any unsoundness of mind in Lee, the trade being in the ordinary course of the affairs of human life, and fair and *bona fide* on the part of the society. It was held that, after the death of the lunatic, his personal representatives could not recover back the premiums paid for the annuities.

Justice Story remarks that courts of equity will watch with the most

jealous care every attempt to deal with persons *non compo'tes mentis,* and asserts that where a contract is entered into with good faith, and is for the benefit of such person, as for necessaries, courts of equity as well as courts of law will uphold it. And so, if a purchase is made in good faith, without any knowledge of the incapacity, and no advantage has been taken of the party, courts of equity will not interfere to set the contract aside, if injustice will thereby be done to the other side, and the parties cannot be placed in *statu quo,* as before the purchase. In this way, as in the case of infants, this class of persons are protected. But the rule of law is used, as it was designed, for a shield. It is not allowed to work a fraud and injustice to others. 1 Story's Equity, sec. 228, and cases in note; *Neill* v. *Morley,* 9 Vesey 478; 2 Kent's Com. 240; *Sprague* v. *Duell,* 11 Paige Chanc. 480; *Loomis* v. *Spencer,* 2 Paige Chanc. 153; *Baxter* v. *Earl of Portsmouth,* 5 B. & C. 170.

Upon the grounds and reasons suggested in the aforesaid cases, the plaintiff will not be permitted to rescind the contract of his testatrix without showing fraud, undue advantage, or imposition in the defendant; for the labor and services of the defendant have now largely entered into the contract, and they cannot be restored to him, or compensation as an equivalent be easily made therefor. The doctrine is well established that no contract can be rescinded unless both can be restored to the condition in which they were before the contract was made. If, therefore, one of the parties has derived an advantage from the performance of the contract, he cannot hold this, and consider the contract as rescinded, but must do all that the contract obliges him to do, and, in such cases, seek his remedy in damages. 2 Parsons on Contracts, 192; *Hunt* v. *Silk,* 5 East. 449; Hilliard on Sales, 308, 377; *Poor* v. *Woodward,* 25 Vt. 445; *Miner* v. *Bradley,* 22 Pick. 458; *Stevens* v. *Cushing,* 1 N. H. 17; *Weeks* v. *Robie,* 42 N. H. 316, and cases cited.

But even assuming the contract to be void in the case before us by reason of the mental imbecility of the testatrix to the extent as alleged by plaintiff's counsel, then what will be the legal result? In such case Greenleaf says: "The executed contract of a person, alleged to be *non compos,* is to be regarded very much like that of an infant, and that, therefore, where goods have been supplied to a party, which were necessaries, or were suitable to his or her station or employment in life, and which were furnished under circumstances evincing that no advantage of his or her mental infirmity was attempted to be taken, and which have been enjoyed by such party, then he or she is liable in law as well as in equity for the value of the goods." 2 Greenleaf's Ev. 369, and cases in notes; 3 Car. & Payne, 30; 2 Car. & Payne, 178; Chitty on Contracts, 108; Story on Contracts, secs. 23, 24; *Kendall* v. *May,* 10 Allen 62. The latter case in Massachusetts shows what may be regarded as necessaries for a wealthy insane person, and is interesting in some of its illustrations. In *McCrillis* v. *Bartlett,* 8 N. H. 569, it has been settled, that, although the statute may avoid the contracts of spendthrifts for their protection, yet, at the same time, it does not avoid their

implied contracts or liabilities for necessaries.   In this case, the defendant had furnished his own personal services and pecuniary aid to the spendthrift to resist the appointment of a guardian over him, upon probable grounds of success.   The court held that such money and aid might be considered as necessaries, as the spendthrift might resist the appointment of a guardian.

From the aforesaid legal authorities there is no doubt that the defendant is entitled to claim under his written contract compensation for any and all actual benefits rendered to the testatrix or her estate, using the term *necessaries* in its liberal sense.   And on a fair construction of the case before us, and a review of the authorities bearing on this subject, we come to the conclusion that there is nothing stated in plaintiff's case indicative of any want of good faith on the part of the defendant, nothing tending to show that he has practiced any fraud, artifice, or imposition upon plaintiff's testatrix, in procuring the contract.   There is nothing to show that defendant had knowledge of any mental imbecility of the testatrix, provided she actually had such infirmity, and it therefore seems to us, that, so far as relates to the inception of the written contract, and the things done under it, the plaintiff cannot sustain this action, and that the nonsuit must stand.   As to any claim outside of the written contract, including board and provisions, the plaintiff can proceed for whatever may be due.