### D. P. RICKETTS ET AL. *v.* SARAH A. E. JOLLIFF, GUARDIAN OF W. E. JOLLIFF, A LUNATIC.

1. CONTRACT. *Previous insanity of party. Proof of capacity.*
   He who would enforce a contract with a person habitually insane previous to the making thereof, must prove that such person was sane and capable of contracting at the time of the transaction in question.

2. SAME. *Insanity of party. Lucid interval. Character of proof.*
   Proof of a lucid interval after derangement of the mind, adduced in support of a contract made in such interval, must be as strong and demonstrative as would be required to show insanity, and must go to the state and habit of the mind, and not merely to an accidental conversation, or behavior on a particular occasion.

3. SAME. *Or deed. Of insane person. May be avoided, when.*
   Any contract or conveyance of property made by an insane person, except for necessaries suited to his condition in life, may be avoided by him on the ground of insanity, if the other party had knowledge thereof, or information that should have led a prudent man to acquire such a knowledge, or if he used any unfairness or fraud in the transaction.

4. SAME. *Rescission. Restitution of consideration, when not required.*
   Restitution of the consideration received by the insane person is not a condition precedent to the rescission of such contract or conveyance, if it has been wasted or has passed beyond his control.

APPEAL from the Chancery Court of Grenada County.

HON. J. G. HALL, Chancellor.

From the 23d of March, 1872, to the 20th of October of that year, W. E. Jolliff was an inmate of the State lunatic asylum, and during that period was, unquestionably, insane. On the last-named day he escaped from the asylum and returned to his home, where he was permitted to go at large till the 18th of May, 1881, when he was again returned to and confined in the State lunatic asylum. When he returned to the asylum he was insane, and was still so on the 18th of September, 1882, the time when the testimony in the record on this point was taken.

On the 26th of February, 1876, Jolliff executed to John Money, as trustee, a deed of trust upon eight hundred and eighty acres of

land and some personal property to secure payment of the grantor's promissory note of that date to D. P. Ricketts, due December 1, 1876, for one thousand seven hundred and eighteen dollars and eighty-two cents, "money advanced," as recited by the deed, to enable Jolliff "to carry on his plantation" during the then current year.

On the 22d of February, 1881, Jolliff executed upon the same property embraced in the deed to John Money a deed of trust to R. D. Duncan, as trustee, to secure the payment of three thousand three hundred and ten dollars and twenty-nine cents to Lake Brothers, which amount, as the deed recited, had been "furnished" by them to Jolliff, "as evidenced by a certain promissory note, due the 1st of December, 1881." On the 5th of April, 1881, an entry of satisfaction was made upon the record of the deed of trust to Money.

Lake Brothers were threatening to enforce the deed of trust in which they were the beneficiaries, when, on the 21st of January, Sarah A. E. Jolliff, as the guardian of her insane husband, W. E. Jolliff, filed the bill in this cause against D. P. Ricketts, Lake Brothers, and R. D. Duncan. The bill alleges that Jolliff was insane and incapable of attending to business at the time he executed the two deeds of trust above referred to, and was so all the time after the year 1871 up to the time of the commencement of this suit; that his insanity was well known to Ricketts, who was a near neighbor to him; that the transaction by which Ricketts procured the deed of trust to John Money was had with the fraudulent intent of getting a lien upon the valuable estate conveyed, worth four or five times the amount of the pretended debt, and of ultimately buying it at a forced sale; that in order to avoid the four weeks' publication of sale which this deed of trust required, Ricketts procured Lake Brothers, his bankers, to fraudulently combine with him in obtaining the deed of trust to Duncan, which authorized a sale of the land, in default of the payment of the indebtedness, on ten days' notice in writing, posted in three public places in the county; that in pursuance of such combination, it was falsely and fraudulently represented to Jolliff, and he was

made to believe, that Lake Brothers had paid his indebtedness to Ricketts, or that the deed of trust given for his benefit had been transferred to them, and thus Jolliff was induced to execute the deed of trust to Duncan for the ostensible benefit of Lake Brothers, when, in fact, they had no interest in the transaction, except to assist Ricketts in defrauding Jolliff of his property; that Ricketts entered satisfaction upon the first deed of trust because he relied upon the last to accomplish his purpose; that a large part of the indebtedness claimed by either deed of trust consisted of usurious interest, charged at the rate of twenty-five per cent. per annum; that the indebtedness sought to be secured by the last deed of trust consists of the original loan to Jolliff with usurious interest at the rate just stated; that the money received by Jolliff from Ricketts was squandered and wasted by the former, and his family got no benefit thereof; and that as neither Jolliff nor his guardian have any part of the consideration of said last executed deed of trust, therefore complainant cannot offer to return the same, though such offer is not deemed necessary. The prayer of the bill is that Duncan and Lake Brothers be enjoined from enforcing the deed of trust executed by Jolliff on the 22d of February, 1881, and that upon final hearing said deed shall be declared void and cancelled, because of the insanity and fraud above alleged.

Ricketts' answer denies the charge of fraud in the bill, and denies that Jolliff was insane, as alleged, or has ever been insane; and it states that if Jolliff was at any time insane the fact was not known to Ricketts, though he did know that Jolliff was sent to the lunatic asylum in 1872 at the instance of his wife, but neither respondent nor many of Jolliff's neighbors thought that he was insane; that in 1873 Jolliff was by a *habeas corpus* proceeding released from commitment to the lunatic asylum; and that during all the time he was out of the asylum he attended to his business, as respondent was informed, and he appeared to respondent to be fully capable of doing so. Ricketts admits in his answer that Lake Brothers have no interest in the deed of trust to Duncan, and that he is the sole beneficiary therein, but he says he had no other object in taking the deed for the ostensible benefit of Lake Brothers than to induce

·the belief in Jolliff that the debt had been transferred to third parties " who he might suppose would not be likely to indulge him." The other defendants adopted Ricketts' answer as theirs.

A great mass of testimony was adduced by either side on the question of Jolliff's sanity or insanity during the period between his escape from the lunatic asylum and his return thereto, and especially as to his mental condition at the times when his trans-actions with Ricketts occurred. The effect of such evidence as viewed by this court is indicated in the opinion, and as to set out the evidence itself here could serve no purpose in elucidating the principles of law announced, it is omitted.

The court below rendered a decree granting the relief prayed for in the complainant's bill, and the defendants appealed.

*Helm & Somerville,* for the appellants.

1. It is not every degree of mental disease or derangement that destroys legal capacity to dispose of property. Weakness of under-standing is not of itself an objection to the validity of a contract if the capacity remains to see things in their true relations and to form correct conclusions. As to the degree of unsoundness neces-sary to invalidate a contract, see *Dennett* v. *Dennett,* 44 N. H. 531, reported in Ewell's Leading Cases 547 and notes, 558 ; 15 Am. Decisions 358 and notes ; 10 Am. Decisions 120 ; 17 Am. Decisions 772 ; Ewell's Leading Cases 674 ; Ib. 684 ; Wharton on Contracts, § 110.

2. When *general* insanity is shown, then burden on defendant to prove lucid interval ; but when temporary insanity is established, then burden is still on complainant to show insanity at the very moment of contracting. Jarman on Wills 111, notes ; 15 Am. Decisions, notes p. 116 ; Ib. 359 ; Ib. 365-6 ; Ewell's Leading Cases 716.

We say that, take the best phase of complainant's proof, it only shows temporary insanity.

3. It is always competent to prove a lucid interval, 15 Am. Decisions — ; Ewell's Notes 715 ; and respondent has shown this. See Wooddle's testimony as to the deed of 1875 and as to the deed of 1881. See W. S. Lake's testimoney, and also testi-

mony of Slocum & Wilson. The day they saw Jolliff in Grenada was the day upon which the deed was executed.

4. Deed of a lunatic is only voidable. *Riggan* v. *Green*, 30 Am. Rep. 77; *Eaton* v. *Eaton*, 18 Am. Rep. 716; *Ruck* v. *Fenton*, 29 Am. Rep. 415; *Breckenridge* v. *Ormsby*, 19 Am. Decisions 71; Perry on Trusts, vol. 1, § 35; Story's Eq. Jurisprudence, vol. 2, § 3165 d; notes to *Jackson* v. *King*, 15 Am. Decisions 364; notes to Ewell's Leading Cases 569; Ewell's Leading Cases 559; Ib. 587; 42 Am. Rep. 147.

5. Complainant must show that Ricketts knew of Jolliff's insanity and took advantage of it, otherwise the parties must be placed in *statu quo*. 2 Jones on Mortgages, § 1510; 1 Perry on Trusts, § 35; 1 Daniell's Chancery Practice (4th ed.) 85; 2 Story's Eq. Jurisprudence, § 1365 d; *Riggan* v. *Green*, 30 Am. Rep. 77; *Eaton* v. *Eaton*, 18 Am. Rep. 716; *Ruck* v. *Fenton*, 29 Am. Rep. 415; 1 Wharton on Contracts, § 111; Benjamin on Sales 290, note 6; *Young* v. *Stevens*, 2 Am. Rep. 202; notes to *Jackson* v. *King*, 15 Am. Decisions 366–7; opinion of Cole in *Allen* v. *Berryhill*, Ewell's Leading Cases 598; Ewell's Leading Cases 622; notes p. 625; Ib. 628; Ib. 631; *Lancaster Co. Bank* v. *Moore*, 21 Am. Rep. 28; 42 Am. Rep. 145–149.

*Frank Johnston*, on the same side.

It is not every person who has a diseased mind who is incapable of making certain kinds of contracts. There may be enough intelligence for attending to ordinary business affairs, including ordinary contracts. Or, in more clearly marked cases of insanity, there may be lucid intervals, where the requisite intelligence is present and valid contracts can be made.

The civil responsibilities of the insane are unimpaired during the lucid interval, because the mind is sufficiently restored to enable the individual to act with tolerable discretion in his civil relations. Ray's Med. Juris. of Insanity, § 393.

The true theory is that there may be a period when there is enough intelligence to contract without the presence of what is scientifically known as a lucid interval. Taylor's Med. Juris. 635, 636.

Dr. Taylor uses the following language in respect to this *lucid interval* and the capacity to contract—the practical test: "If a man acts rationally and talks coherently we can have no better proof of a restoration to reason." Ib. 636.

The following observations of Dr. Ray are of value in arriving at a correct conclusion in the case at bar.

This learned writer says a distinction is always to be taken between a restoration followed by a recurrence of the disease and a lucid interval, and a renewal of the disease does not prove that it has *never* been cured. Ray's Med. Juris. of Insanity, § 394.

I call attention to the rule laid down by this court in *Brock v. Luckett*, 4 How. 459, where it was declared that the test is whether the party had the capacity at the time of making the will, though he may have been insane both before and after making it. And in that case the will was sustained on the lucid interval theory, though three out of four of the physicians who were introduced as witnesses said that the testator could not have had a lucid interval.

In *Mullins v. Cottrel*, 41 Miss. 291, the court said that insanity should be established "by the clearest and most satisfactory proofs," and the court also declared that this rule increased in stringency where witnesses testify to soundness of mind at the particular time of making the contract.

As to the rescission of a contract with a lunatic, Parsons thus states the law: "That a *bonâ fide* contract made with a lunatic who was *apparently* sane cannot be rescinded by him or his representatives unless the parties can be placed *statu quo.*" 1 Parsons on Con., 5th ed., p. —, note 1.

If the mortgage of 1881 was *voidable*, then the court in setting it aside or vacating it must restore the parties to the position they occupied at the time—they should be placed in *statu quo.* This is the well-settled rule—the court "will put the parties in the situation they occupied before it was entered into as nearly as practicable." *Fitzgerald v. Reed*, 9 S. & M. 102, 103.

*A. H. Whitfield*, for the appellee.

1. When the sane party to a contract with an insane person

*knows*, or *could* by reasonable diligence know, or have reason to *believe or suspect* even, that the other party is insane, then *always*, in England, 9 Vesey, Jr. 478, Ewell L. C. 631, and here, the sane person loses all he has parted with, without any restoration to his *status quo*. Ew. L. C. 631; Taylor's Med. Jur. 669; 15 Am. Dec. 367; *Lincoln* v. *Buckmaster*, 32 Vt. 652; 7 U. S. Dig. 1st Series 570, § 368; 21 Am. Rep. 29, and Bishop on Contracts, § 291. The authorities following express the doctrine very exactly. Ew. L. C. 598. "But if there was any unfairness in the contract, *or* if the party dealing with the lunatic had *knowledge* of his lunacy, and obtained even a slight advantage by it" (twenty-five per cent., for instance, for any part of a year), "this would destroy the basis of equality and justify a court in setting aside the contract, *notwithstanding the parties could not be placed in status quo;*" and same, Ew. L. C. 631. "Here if the defendant could be placed in *mala fide*, as *having notice*, that would be a distinct and different ground for the interference of a court of equity," and the *status quo* would not be restored; and finally, "Dealing with persons *non compos mentis* is *evidence of fraud.*" 2 Kent 585; *Jones* v. *Perkins*, 5 B. Monroe 227. I will conclude this point by referring to the authority of *Simonton* v. *Baker*, 49 Miss. 582.

It is there held that no offer to restore the *status quo* is ever necessary, and that the consideration parted with by the lunatic is not to be restored when it has been wasted, and that whether it is ever to be restored depends upon "the circumstances of each case, as presented," p. 590; when there is knowledge of lunacy or fraud, it is not to be restored.

2. The right to have the deed set aside is like the infant's privilege—paramount and supreme—and it cannot be made dependent upon an offer to return the consideration received by the lunatic. *Gibson* v. *Speer*, 6 Gray 279; Ew. L. C. 595; *Bond* v. *Bond*, 7 Allen 1; *Henry* v. *Fine*, 23 Ark. 417; *Somers* v. *Pumphey*, 24 Ind. 231–238; *Chew* v. *Bank of Baltimore*, 14 Md. 318; *Hovey* v. *Hobson*, 53 Me. 453; Metcalfe on Cont. 80; *Fitz Gerald* v. *Reed*, 9 S. & M. 94, and 17 Am. Dec. 327.

3. All that is required to set aside a deed on the ground of insanity is that the unsoundness of mind should be such as to incapacitate a party for the ordinary management of his affairs, Ew. L. C. 627; Taylor's Med. Jur. 663, and even this is held to be *too much* to require. Ew. L. C. 546. *Berhea* v. *McLennon*, 1 Ired. (N. C.) L. 523; *Johnson* v. *Chadweel*, 8 Humph. 145 in U. S. Dig. N. S., vol. 7, p. 569; *Better* v. *Jones*, 25 Ark. 92.

4. Where insanity has once been established, and a deed executed thereafter, the burden of proof is on the sane party to show clearly and convincingly that the deed was executed in a lucid interval. Ew. L. C. 694. His general habit and state of mind must be shown—not its condition in an accidental interview. Ew. L. C. 665; *Hall* v. *Warner*, 9 Vesey 611, in Ew. L. C. 702; *White* v. *Wilson*, 13 Vesey 88, in Ew. L. C. 697; Ew. L. C. 716. *It is not enough to show he was sane day before and day after*—it must be the *very day*. Ew. L. C. 716; *In re Gangwere's Estate*, 14 Pa. St. 17. "Often after a paroxysm of insanity has passed away insanity may still be lurking in the mind." Ew. L. C. 716, 717; U. S. Dig. O. S., vol. 7, p. 570, § 375—any number of authorities sustaining point; U. S. Dig. N. S., vol. 5, p. 432, Division 14; *Goodel* v. *Harrington*, 3 Thomp. and C. (N. Y.) 345. "Lucid interval is not a mere remission." Taylor's Med. Jur. 635–6; definition of lucid interval. Ew. L. C. 695, "not a short effort of the mind, etc." *Hall* v. *Warner*, 9 Vesey 611.

Where insanity has once been proven to exist, the law presumes its continuance. 7 U. S. Dig. 1st Series 570, § 354, with authorities.

5. The contracts of persons *non compos mentis* are absolutely void, whether executed or executory—mere nullities. *Fitz Gerald* v. *Reed*, 9 S. & M. 94, leaves it open, but cases following are decisive. Ew. L. C. 585; Story on Prom. Notes, § 101; Taylor's Med. Jur. 671; *Seaver* v. *Phelps*, 11 Pick. 304 (Ew. L. C. 610); *Pearl* v. *McDowell*, 3 J. J. Marshall, 658; 2 Greenl. Ev., § 369; *Long* v. *Whidden*, 2 N. H. 435; *Grant* v. *Thompson*, 4 Conn. 203. These cases state it thus—"that no recovery can be had on any contract, express or implied, of a lunatic except for necessaries."

*Henry* v. *Fine,* 23 Ark. 417 ; 15 Am. Dec. 365· This is the settled English doctrine, and that of the Supreme Court of U. S. *Dexter* v. *Hall,* 15 Wallace 9 ; *Van Deuren* v. *Sweet,* 51 N. Y. 378 ; *De Silver's Estate,* 5 Rawle 110 ; *Rice* v. *Peete,* 15 Johns. 503, and *Owing's Case,* 17 Am. Dec. 327.

ARNOLD, J., delivered the opinion of the court.

Sanity is presumed until the contrary appears, and the burden of proof is on the party alleging insanity to prove it ; but when a person is shown to have been generally or habitually insane at any particular period, that condition is presumed to continue, and whoever relies on a lucid interval to support a contract subsequently made with such a lunatic must prove it and show sanity and competence at the time the contract was made. 1 Greenl. Ev., §§ 42, 81 ; *Attorney-General* v. *Parnther,* 3 Bro. Chan. 368.

And a lucid interval is not merely a cessation of the violent symptoms of the disorder, but a restoration of the faculties of the mind sufficiently to enable the party soundly to judge of the act. The evidence in support of a lucid interval, after derangement has been established, should be as strong and demonstrative of such fact as when the object of the proof is to show insanity, and it ought to go to the state and habit of the person, and not to the accidental interview of any individual or to the degree of self-possession in any particular act. *Attorney-General* v. *Parnther,* 3 Bro. Chan. 368 ; *Hall* v. *Warner,* 9 Ves. 605.

Except for necessaries suited to his condition in life, a lunatic cannot make a contract. Courts of law, as well as equity, protect persons of unsound mind from the consequences of contracts attempted to be made by them. Against the consequences of mere imprudence, folly, or that deficiency of intellect which makes mistake easy but does not amount to unsound or disordered intellect, even equity affords no relief, unless the other party has made use of this want of intelligence to do a wrongful act. 1 Parsons on Con. 387. Weakness of understanding is not of itself any objection to the validity of a contract if the capacity remains to see things in their true relations and to form correct conclusions.

The doubtful and uncertain point at which the disposing mind disappears and where incapacity begins can be ascertained only by an examination of all the circumstances of each particular case, to be duly weighed and considered by the court or jury, and in determining the question the common sense and good judgment of the tribunal must be mainly relied on.    *Young* v. *Stevens*, 48 N. H. 133.    Generally, when it appears that a person had not strength of mind and reason sufficient to understand the nature and consequences of his act in making a deed or other contract, it may be avoided on the ground of insanity.    *Dennett* v. *Dennett*, 44 N. H. 531; *Young* v. *Stevens*, 48 N. H. 133; *Baldwin* v. *Dunton*, 40 Ill. 188; *Hill* v. *McLaurin*, 28 Miss. 288; *Jackson* v. *King*, 15 Am. Dec. 354.

When a person contracting with one who is insane has knowledge of the insanity, or information that would lead a prudent man to such knowledge, or where there has been unfairness or fraud in the transaction, the contract will be rescinded, and restitution of the consideration received by the insane person is not a condition precedent to the rescission when it has been wasted or has passed beyond his control.    *Simonton* v. *Bacon,* 49 Miss. 582; *Brantley* v. *Wolf*, 60 Miss. 420; *Gibson* v. *Soper*, 6 Gray 279; *Henry* v. *Fine*, 23 Ark. 417; *Jackson* v. *King*, 15 Am. Dec. 354.

To require, as an inflexible rule in such case, that the parties shall be placed in *statu quo* would be but little better than the long since exploded doctrine, which at first would not permit one to stultify himself, as it was termed, by pleading his own incapacity, and afterward recognized no degree of mental alienation short of a total loss of reason and understanding as sufficient to invalidate a contract on that account.

It is charged in the bill, and there is evidence to support the allegation, that the consideration received for the two trust-deeds in question was wasted and squandered by W. E. Jolliff.    The testimony of the appellant, Ricketts, shows that he did charge interest at the rate of twenty-five per cent. per annum, and that a large part of his claim, secured by the two trust-deeds, is for accumulated interest at that rate, and that he did practice a deception

on Jolliff in having the last trust-deed made to secure a debt pretended to be due from Jolliff to Lake Brothers, when, in fact, Jolliff owed them nothing. One of the trust-deeds was executed on the 26th of February, 1876, and the other on the 22d of February, 1881. It appears very clearly from the testimony that when W. E. Jolliff was placed in the asylum in the spring of 1872 and escaped therefrom in the fall of the same year, and was returned thereto in the spring of 1881, he was insane and incapable of transacting business of any kind. There is much conflict in the testimony as to what was his mental condition from 1872, after he escaped from the asylum, until he was brought back in 1881; but a lucid interval at the time of the execution of the trust-deeds is not satisfactorily proven, and it is a fair deduction from the whole evidence that he was incapable, on account of mental imbecility, during that time of making the trust-deeds, and that appellants were cognizant of his infirmity.

*Affirmed.*