335 So.2d 110 (1976)
Willie Ester WILLIAMS, Ncm by Ted Williams, next friend
v.
Woodson WILSON.
No. 48713.
Supreme Court of Mississippi.
July 20, 1976.
*111 Sam H. Long, James O. Ford, Tupelo, for appellant.
Euple Dozier, Nell C. May, Fulton, for appellee.
Before GILLESPIE, C.J., and PATTERSON and WALKER, JJ.
WALKER, Justice, for the Court:
This is an appeal from a decree of the Chancery Court of Itawamba County, Mississippi, finding that Willie Ester Williams was competent on February 10, 1970, to execute a deed to appellee. Woodson Wilson, to sixty acres of land in Itawamba County for $3,000.
The evidence discloses that on July 11, 1968, pursuant to a lunacy affidavit, Doctors H.J. Blakeney, M.D., and Robert J. Cole, M.D., being licensed, practicing physicians and residents of Monroe County, Mississippi, certified that they had conducted an inquiry on July 11, 1968, and made a thorough mental and physical examination of Willie Ester Williams of Fulton, Mississippi. It was their opinion that she was suffering from a mental or nervous disorder, condition or affliction, more particularly described as schizophrenic and was in need of treatment, supervision and control at a mental institution of the State of Mississippi, and that she was mentally incapable of taking care of her person and estate. Thereafter, on July 25, 1968, Dr. W. Jaquith, M.D., Director of Mississippi State Hospital, Whitfield, Mississippi, reported to the Chancery Court of Itawamba County that it was the judgment of the psychiatric staff of that hospital that Willie Ester Williams was suffering from a mental or nervous condition or disorder diagnosed as schizophrenic, schizo-affective type, depressed, and that she was in need of treatment and supervision. The record is not clear as to just how long Willie Ester stayed at Whitfield, although we may safely assume that her confinement covered a period of several months. The record does not reveal that she the was ever discharged from the hospital, but she did return home where, according to the uncontroverted testimony of several witnesses, she was not in her right mind.
On February 10, 1970, Willie Ester Williams executed a deed to the sixty acres of land in question to Woodson Wilson for the sum of $3,000. (An experienced appraiser who testified for appellant fixed the fair market value of the sixty acres as of February 10, 1970, at $6,500). She then went to live with her son in Detroit, Michigan, where, according to Dr. William J. Arnold, a physician in Detroit, her mental disorder continued. Dr. Arnold[1] testified that he treated Willie Ester from March 5, 1970, 27 days after the deed was executed, until November 29, 1971, at regular intervals. He diagnosed her condition at that time as one of psychotic depression, and he was of the opinion that her condition was of long standing. He further testified, "I would say categorically that in my opinion the patient was not of sufficient mental capacity on February 10th, 1970 to have understood the purport of a deed and the consideration therefor for sixty acres of land and to have looked after her interest at that time."
We are of the opinion that the testimony in this case established beyond *112 question that Willie Ester Williams was generally and habitually insane and incapable of looking after her affairs from the time of her commitment to Whitfield on July 12, 1968, through her examination and treatment by Dr. Arnold in Detroit. Moreover, the purchaser of the property, Woodson Wilson, was put on notice that she was probably suffering from a mental disorder. The attorney who examined the title to the property for Wilson testified that he found Willie Ester Williams had been committed some few years prior to that time to Whitfield; and, that he brought this to Mr. Wilson's attention and asked him about her competency. He said that he realized that something like this could come up in the future. Under the circumstances, it was the duty of the purchaser to make an investigation into the competency of Willie Ester Williams, and, failing to do so, he bought the property at his peril.
This case fits squarely within the holding of Ricketts v. Jolliff, 62 Miss. 440 (1884) where it was said:

Sanity is presumed until the contrary appears, and the burden of proof is on the party alleging insanity to prove it; but when a person is shown to have been generally or habitually insane at any particular period, that condition is presumed to continue, and whoever relies on a lucid interval to support a contract subsequently made with such a lunatic must prove it and show sanity and competence at the time the contract was made. 1 Greenl.Ev., §§ 42, 81; Attorney-General v. Parnther, 3 Bro.Chan. 368.
And a lucid interval is not merely a cessation of the violent symptoms of the disorder, but a restoration of the faculties of the mind sufficiently to enable the party soundly to judge of the act. The evidence in support of a lucid interval, after derangement has been established, should be as strong and demonstrative of such fact as when the object of the proof is to show insanity, and it ought to go to the state and habit of the person, and not to the accidental interview of any individual or to the degree of self-possession in any particular act. Attorney-General v. Parnther, 3 Bro.Chan. 368; Hall v. Warner, 9 Ves. 605.
Except for necessaries suited to his condition in life, a lunatic cannot make a contract. Courts of law, as well as equity, protect persons of unsound mind from the consequences of contracts attempted to be made by them. Against the consequences of mere imprudence, folly, or that deficiency of intellect which makes mistake easy but does not amount to unsound or disordered intellect, even equity affords no relief, unless the other party has made use of this want of intelligence to do a wrongful act. 1 Parsons on Con. 387. Weakness of understanding is not of itself any objection to the validity of a contract if the capacity remains to see things in their true relations and to form correct conclusions. The doubtful and uncertain point at which the disposing mind disappears and where incapacity begins can be ascertained only by an examination of all the circumstances of each particular case, to be duly weighed and considered by the court or jury, and in determining the question the common sense and good judgment of the tribunal must be mainly relied on. Young v. Stevens, 48 N.H. 133. Generally, when it appears that a person had not strength of mind and reason sufficient to understand the nature and consequences of his act in making a deed or other contract, it may be avoided on the ground of insanity. Dennett v. Dennett, 44 N.H. 531; Young v. Stevens, 48 N.H. 133; Baldwin v. Dunton, 40 Ill. 188; Hill v. McLaurin, 28 Miss. 288; Jackson v. King, 15 Am.Dec. 354.

When a person contracting with one who is insane has knowledge of the insanity, or information that would lead a prudent man to such knowledge, or where there has been unfairness or fraud in the transaction, the contract will be rescinded, *113 and restitution of the consideration received by the insane person is not a condition precedent to the rescission when it has been wasted or has passed beyond his control. Simonton v. Bacon, 49 Miss. 582; Brantley v. Wolf, 60 Miss. 420; Gibson v. Soper, 6 Gray 279; Henry v. Fine, 23 Ark. 417; Jackson v. King, 15 Am.Dec. 354. (62 Miss. at 448-449). (Emphasis added).
The burden in this case was upon the purchaser of the land, Woodson Wilson, to prove that Willie Ester Williams executed the deed during a lucid interval and to show that she was sane and competent at the time to make the contract. The evidence in support of a lucid interval, after derangement has been established as in this case, should be as strong and demonstrative of such fact as when the object of the proof is to show insanity, and it ought to go to the state and habit of the person and not to a single interview of any individual or to the degree of self-possession in any particular act or behavior on a particular occasion. See Polk v. Martin, 116 So. 107 (1928).
The only evidence tending to show that Willie Ester Williams was in a "lucid interval" at the time she executed the deed to the sixty acres of land to Mr. Wilson came from three witnesses who observed her briefly:
Mr. Dave W. Reeder, the manager of the Bank of Mississippi in Fulton, testified that he remembered Willie Ester Williams coming to the bank in 1970 and saying she was interested in selling some land. He referred her to Mr. Homer Wilson but did not remember any other conversation that he might have had with her.
Appellee's attorney testified that he found Willie Ester had been committed to Whitfield and that he brought this to Mr. Wilson's attention. The attorney stated that he questioned her with that in mind and also talked to her son, who assured him that she was all right and that there would be no question about the deed; that he realized something like this could come up in the future and saw nothing indicating that she was not competent; and that in his opinion she was competent to make the deed and realized the consequences of her act. However, his observation only covered a period of about fifteen minutes when the deed was signed and acknowledged.
Mr. Homer Wilson, who was an employee of the bank at the time of the execution of the deed and who handled the transaction for his cousin, Woodson Wilson, testified that Willie Ester Williams was referred to him by Mr. Reeder in February of 1970. She was accompanied by her son and wanted to sell some land. He told them that he knew some people that were interested in buying land and that he could possibly help them. He could not leave the bank when they first came to him, about nine o'clock a.m., but he went to their house around four-thirty or five o'clock or just before dark, and they drove together in his pickup truck to the land where "they" showed him the lines. Willie Ester told him that they had sold the timber as it had just been cut. They then went back to Willie Ester's house and he told them that "we could buy it for a fixed price." The next morning Willie Ester and her son were waiting at the bank and wanted to have the deed prepared. Because of some technical difficulties that had to be cleared up, he put them off, and they came back that afternoon when the deed was completed, and the transaction was made at that time. He said that Willie Ester told him that she wanted to sell the land as soon as she could so that she could go to Detroit to her other son's. He testified that she appeared to be normal and that her son told him that his mother was all right. When asked on cross-examination whether he bought the land even though he knew that she had been adjudicated a lunatic, he replied: "Yes, sir, I was of the impression that one is not always incompetent necessarily and that sanity could be restored to an individual and I felt that this lady was very sane and knew exactly what she was doing at the time."
*114 The testimony of the three witnesses falls far short of the rule announced in Ricketts v. Jolliff, supra, and restated in Polk v. Martin, supra, that "proof of a lucid interval after derangement of the mind, adduced in support of a contract made in such interval, must be as strong and demonstrative as would be required to show insanity, and must go to the state and habit of the mind, and not merely to an accidental conversation, or behavior on a particular occasion." The testimony of Mr. Reeder covered a momentary period, the testimony of the attorney who handled the transaction covered a period of only fifteen minutes, and the testimony of Mr. Homer Wilson, the agent and cousin of Woodson Wilson, covered a brief period on Monday, February 9, 1970, another short period late that evening just before dark, and then a short period covering fifteen minutes on the morning of February 10, 1970, when the deed was executed. It could hardly be argued that such testimony based on the observations of lay witnesses over such a short period of time would be sufficient evidence upon which a person could be found to be insane. Conversely, under the rule of Ricketts and Polk, supra, it is not sufficient to show that Willie Ester Williams, who was habitually insane, had a lucid interval on February 10, 1970, and was competent to execute a deed to her property.
We are of the opinion that the purchaser of the land, Woodson Wilson, wholly failed to meet his burden of proving that Willie Ester Williams was in a "lucid interval" and was competent at the time she executed the deed, and that the chancellor was manifestly wrong in his finding.
This cause is therefore reversed and remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, BROOM and LEE, JJ., concur.
NOTES
[1] Dr. Arnold's testimony was taken by means of written interrogatories and cross-interrogatories propounded to him.