Elmira Simonton *et al. v.* W. H. Bacon, Guardian of William Hughes.

1. CHANCERY—REDUNDANCY IN A BILL.—If a bill, considered as a whole, shows a good cause of action, it cannot be defeated on demurrer, because there is injected into it, allegations which are redundant and irrelevant.

2. EFFECT OF UNDUE INFLUENCE UPON ONE OF FEEBLE INTELLECT.—Where one of a feeble understanding enters into a contract with a person in whom he had confidence, so that he trusts to that person to do right towards him and guard his interests, if there be any unfairness in the transaction, the inference is, that it was obtained by fraud, circumvention, or undue influence, and he is not bound by the contract. Bunch v. Shannon, 46 Miss., 526.

3. SAME—SAME.—There may be such imbecility of mind, from whatever cause induced, as *ipso facto* to incapacitate to contract. But a mere suggestion of a weakness of intellect is not of itself sufficient to avoid a contract. It must be shown that the other party used some undue means to draw him into the agreement. Willis v. Jarnegan, 2 Atk. R., 251. But this may be inferred from the character of the contract. 1 Story Eq. Jur., sec. 236; Warner v. Daniels, 1 Wood & Min., 103.

4. RULE IN SUCH CASES.—The rule in such cases is: not whether the bargain to the complaining party was a bad and disadvantageous one, but was he led into it by unfair means, which amount to fraud, deceit or imposition.

5. CONTRACT—EFFECT OF RESCISION—RULE, ETC.—The general rule is, that when there is a rescision of the contract, the parties should be placed in *statu quo.* Where that cannot be done, specifically, some other relief, which will administer justice, may be substituted. Norton v. Norton, 5 Cush., 530; Fitzgerald v. Reed, 9 S. & M., 102.

6. SAME—RESTITUTION; CONDITION PRECEDENT—RULE, ETC.—The general rule is, that restitution is not a condition precedent to a recovery of the property conveyed. Nor is it necessary that the complainant should tender with his bill the consideration paid him. Gibson v. Loper. 6 Gray's R., 282.

Appeal from the chancery court of Lee county. Hon. O. H. WHITFIELD, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*Sale & Dowd,* for appellants:

1. The only legal fact involved in the question of the incompetency of the complainant to contract on account of insanity, was that of his *actual* insanity, and the causes of it would not become pertinent, except in a question of medical jurisprudence.

The influence brought to bear upon Hughes, were founded upon a general popularity of Simonton among his fellow-citizens, and do not constitute that undue and improper inflence which will vitiate the contract. The true exposition of that poisonous element as affecting the validity of deeds and wills procured by its exercise, is graphically described by Greenleaf to be "an influence obtained either by flattery, excessive importunity or threats, or in some other mode by which a dominion is acquired over the *will* of the legislator, [or grantor,] destroying his free agency, and constraining him to do against his free will what he is unable to refuse." 2 Greenl. Ev., (Redfield's Ed.,) § 688, note 1.

The acts and contracts of persons who are of weak understandings will be held void in courts of equity, if the nature of the act or contract justify the conclusion that the party has not exercised a deliberate judgment, but has been imposed upon, circumvented, or overcome by cunning or artifice, or undue influence. But the simple fact that the intellectual capacity of one party to a contract is below that of the average of mankind, does not alone furnish sufficient ground for setting aside the contract. 1 Story, Eq. Jur., (Redfield's Ed ) §§ 237, 238; Block v. Christian, 1 Knapp, 77. In the case made by the bill, Simonton's conduct is not brought within the rule.

The representations ascribed to Simonton, by which it is charged Hughes' action was influenced, lack the principle element of fraud and falsehood. They constitute mere conjectural opinions concerning the future political condition of the country, based upon fair and honest belief.

If Hughes was insane at the time of making the contract, and that fact appears of record, he cannot sue in his own name to avoid it, until his insanity shall have ceased. Once proven to have been insane, his insanity is presumed to continue until the contrary is proved. He must sue by his committee, or by his next friend. Story Eq. Pl., §§ 64, 66; 1 Bland, 370; Fitzgerald v. Reed, 9 S. & M.. 94: cited and discussed.

But whether the suit be rightfully brought or not, he cannot avoid his executed contract, without first restoring the admitted amount of consideration received, by its actual payment into court, and offering to voluntarily pay back any further amount, to be ascertained by the account prayed to be taken. Fitzgerald v. Reed, *supra*; Loomis v. Spencer, 2 Paige, 153; Arnold v. Richmond Iron Works, 1 Gray, 437.

*Houston & Reynolds,* for appellee:

I. Contended that the facts shown by the bill, entitled the complainant to the relief prayed for. The influence of Simonton over Hughes, was that of the strong over the weak: and undue advantage for the benefit of the former being taken, the transaction should be annulled. If a person is of a feeble understanding, and the bargain is unconscionable, what better proof can one wish of its having been obtained by fraud or imposition, or undue influence, as by the power of the strong over the weak. Story Eq. Jur., 236 note. "If a contract which is rash, improvident, or harsh, be made with a person of weak understanding, there does arise a natural inference that it was obtained by fraud, circumvention, or undue influence." Ib., 235, 238, note 2.

2. On the question of redundancy in the bill, see Taylor v. Eckford, 1 S. & M., 21–34; Seymour v. Delany, 6 Johns. ch., 223–227; 4 Kent, Com., 307; Story, Eq. Jur., 234, 235.

3. Was complainant authorized to bring suit in his own name? Under the ancient common law, lunatics were permitted to show their lunacy in defense of their alleged contract. 2 Black. Com., 291. But later this right was denied on the ground that a man cannot know in his sanity what he did when he was insane. The modern doctrine is, that a lunatic may allege his lunacy as a defense to an alleged contract. Rice v. Peet, 15 Johns., 503; Webster v. Wofford, 3 Day, 90; Lang v. Whidden, 2 N. H., 435; Mitchell v. Kingman, 5 Pick., 431; Doe v. Dignowitty, 4 S. & M., 73; Owen's Case, 1 Bland Ch., 376. There is no allegation in the bill that complainant was absolutely a lunatic, but only

that his mind was seriously diseased. To say that one has fits of insanity at one time does not mean that a fit is on him all the time, and he has one now. So when we aver that complainant was subject to attacks of insanity, which in degree and effects were variable, and that he has not entirely recovered, it does not follow that he is insane now. The only question is, was he insane at the time of making the contract. A lunatic may sue by himself or guardian to set aside a contract made by him. Doe v. Dignowitty, 4 S. & M., 73; Fitzgerald v. Reed, 9 ib., 102, 103; Gibson v. Loper, 6 Gray, 279; Baxter v. Earl of Portsmouth, 9 Eng. C. L. R., 79; Mitchell v. Kingman, 5 Pick., 431.

4. Ought the complainant to make an offer in his bill to place the parties in *statu quo?* No considerations of policy or equity require the adoption of such a rule. To say that an insane man, before he can avoid a voidable deed, must put the grantee in *statu quo*, would be to say, in effect, that in a large majority of cases, his deed shall not be avoided at all. The more insane the grantor was when the deed was made the less likely will he be to retain the fruits of his bargain, so as to be able to make restitution. 6 Gray, 282, 283; Dearborne v. Eastman, 4 N. H., 441; Tucker v. Moreland, 10 Pet., 58; Shaw v. Boyd, 5 Serg. & R., 309; Phillips v. Green, 3 A. K. Marsh., 7; Wilcox v. Roath, 12 Conn., 550; Goodsell v. Myers, 3 Wend., 479.

5. The demurrer is to the whole bill. If a demurrer is applied to the whole bill, when it is good to part only, it will be overruled. Story Eq. Pl., § 443; 42 Miss., 347, 473, 496.

SIMRALL, J., delivered the opinion of the court:

The equity of the complainant's bill is assailed upon numerous grounds. The special assignments bring into criticism the entire frame and scope of the bill.

The bill describes the complainant as being for many years prior to the date of the transaction, set out in the bill as the ground and reason of the relief prayed, as "greatly

diseased in mind;" his mental faculties impaired and weakened, and subject to attacks of insanity and delusion; that because of this mental condition complainant had been for several years, and still was disqualified to manage "worldly affairs," and make contracts; that this mental incapacity, for this period of time, *and on the 30th of January*, 1865, (the date of the conveyance to Wm. F. Simonton) was known to his neighbors and friends, of whom John W. Simonton was one.

Complainant states that John W. Simonton had been acquainted with him for years; knew his mental condition, and proposed to him to purchase the four hundred and eighty acres of land described in the bill. Simonton was a man of intelligence, tact and shrewdness; had been an officer in the southern army, was then a State Senator, and whose opinions had a controlling influence with complainant. He represented to the complainant that the pending war would end in the subjugation of the south; lands would be comparatively worthless, and when held by those who had borne arms on the insurgent side, would be confiscated; therefore it would be prudent to convert them into money or some other property. Influenced by these arguments, complainant conveyed the lands to Dr. W. Simonton, who would hold for the benefit of John Simonton, at the price of $20.00 per acre, aggregating $9,600.00, which was paid by John W. Simonton, in the following manner: One mule, valued at $1,200.00; two horses, at the valuation of $3,000.00; six hundred and eighty pounds of pork, at $680.00; a negro slave, at the valuation of $2,500.00; and $2,270.00 in Confederate money. All of the consideration, reduced to good funds, would equal about $350.00. The conveyance was made to Dr. William Simonton, the brother of John W., because he had done nothing for which the land could be confiscated, and would be a safe depository of the title for the benefit of John W.

Wm. F. Simonton, on the 27th of February, 1867, preparatory to filing an application to be discharged as a bankrupt,

conveyed the lands to G. F. Buchanan, who paid no consideration for the same. Buchanan, who was a cousin of the Messrs. Simonton, made a voluntary conveyance to their mother. Wm. F. Simonton being described in the bill as a dry trustee for John W., his brother, and Buchanan and Mrs. Simonton, as voluntary alienees; it would follow that, if the complainant has stated a case for relief against John W., these parties occupy no better attitude, being substituted by the conveyances to his place. These are the substantive allegations upon which the complainant must succeed, if at all.

The bill states several other facts, such as complainant's discharge from the army because of his mental infirmity; the institution of proceedings by Wm. F. Simonton to turn the complainant out of possession, under the forcible entry and detainer statute; the subsequent bringing, by Wm. F. Simonton, of an action of ejectment, and its dismissal, and the active agency of John W. in the preparation and conduct of the suit, etc. These, and, perhaps, some other allegations, were not necessary to be stated. The utmost that may be said of them are, that they may be redundant, and contribute to overload the bill with impertinent matter. They were, perhaps, introduced by the pleader as auxiliary support to the main allegations. Of themselves, they do not make a case for relief; but if the bill, considered as a whole, shows a good cause of action, it cannot be defeated on demurrer, because there is injected into it allegations which are redundant and irrelevant. Whilst this is so, we must not be understood as holding that any of these and such like facts may not be proved as may tend to establish the imposition and circumvention, and a knowledge of the mental condition of the complainant by John W. Simonton. To prove deceit and fraud, the range of proof may reach to many particulars, not stated, or necessary to be averred.

Putting the substantive facts disclosed in the bill in the simplest form of expression, and they are these: The complainant's mental faculties were impaired and weakened to the degree

to unfit him to manage his affairs. This condition was induced by occasional attacks of insanity and delusion; and was known to John W. Simonton; who induced him to part with the title to his land for a grossly inadequate consideration, by arguments and persuasions, to which he yielded; said Simonton, on account of his intelligence and high position, having great influence with him. Whether the complainant was insane or in the condition of feeble and impaired mind at the date of the conveyance, we are of opinion that these facts constitute sufficient reason in law to rescind and cancel the conveyances.

In one view of it, this case is somewhat analogous to that of Bunch v. Shannon, 46 Miss. Rep., 526. There the contract was rescinded because " Bunch was a man of feeble understanding, not, however, to the degree, that on that *ground alone*, his contract might be avoided; yet, if entered into with a person in whom he had confidence, so that he trusts to that person to do right towards him and guard his interests, and if there be any unfairness in the transaction, there may be the inference that it was obtained by fraud, circumvention or undue influence." There may be such imbecility of mind, from whatever cause induced, as *ipso facto* to incapacitate to contract. But a mere suggestion of a weakness of intellect alone, is not of itself sufficient to avoid the contract; it must be shown that the other party used some undue means to draw him into the agreement. Willis v. Jarnegan, 2 Atk. Rep., 251. But the contract may be so unconscionable and ruinous as to be a pregnant circumstance, from which the fraud, undue influence, or imposition may be inferred. 1 Story Eq. Jur., § 236; Warner v. Daniels, 1 Wood & Minn., 103. It is, perhaps, impossible to lay down a general rule of universal application. It were safer to let each case stand on its special circumstances. There are gradations and degrees of mental weakness, as there are of intellectual strength. When the wise and the simple come into contact in business transactions, the inquiry in each instance, looking to all its circum-

stances, is, not whether the bargain to the complaining party was a bad and disadvantageous one, but, was he led into it by unfair means, which amount to fraud, deceit, imposition, or circumvention.

There is no doubt that if a party has been found, by a court of competent jurisdiction, to be an idiot or insane, that legal proceedings ought to be instituted in the name of his guardian or committee. The lunatic may or may not be joined as a co-plaintiff. Story eq., p. 6, § 64 to § 66, inclusive. If the insanity is manifested, pending the suit, a court of equity may appoint some fit person to conduct it as *prochein ami.* Ib. The bill does not show that there has been an inquisition finding Hughes to be a lunatic, nor was it averred that he was insane at the time the suit was begun. In Fitzgerald v. Reed, 9 S. & M., 102, the suit was brought as in this case, and for like relief. It is not disclosed in the order appointing the next friend upon what evidence, or information the court proceeded, the record does not discover that any evidence was heard or inquiry made. There is more difficulty on the point whether the complainant ought not to have tendered with his bill a restoration of the consideration received for the land, or its equivalent. Sanity or a possession of sufficient mental capacity to understand the nature and quality of the act, is necessary to make a contract. It is also true that the sale of real estate, or other contract of a lunatic, may, upon restoration to reason by clear and unequivocal acts, manifesting a comprehension of the subject, be ratified. Of such acts, would be the acceptance of the consideration after a restoration of reason. Norton v. Norton, 5 Cush., 530; Butler v. Hildreth, 5 Met., 49; Arnold v. Richmond Iron Works, 1 Gray, 434. The reasoning of our predecessors in Fitzgerald v. Reed, 9 S. & M., 102, was to the effect that the deed was voidable.

Upon the rescision of the contract the general rule is that parties must be put in *statu quo.* Where that can not be done specifically, some other relief, which will administer justice, may be afforded. If a lunatic seeks to avoid a con-

tract, certainly he should not retain the fruits and advantages of the bargain. If the consideration money, arising from the sale of land, has been invested in other property, the lunatic should not retain the land and hold on also to the property acquired with the money. Nor, on the other hand, if because of the mental infirmity he has wasted or destroyed the money, or other thing, receiving no good or benefit therefrom, should he be held to a restoration. If, however, he has realized a substantial benefit, to that extent should he or his estate make restitution.

The Chancellor recognized this principle in Loomis v. Spencer, 2d Paige, 158; announcing that inquiry should be made, to ascertain the benefits realized by the lunatic, and to that measure he should be bound. In Fitzgerald v. Reed, 9 S. & M., 108; the court distinctly recognizes the justness of the rule in this language: "Whatever benefit the lunatic or his estate may have received in consequence of the contract must be given up." To determine that fact an account was directed to be taken. This doctrine comes short of requiring as a condition precedent to the rescision, that the complainant must tender, with his bill, the price which was paid him; nor is it absolutely incumbent on the lunatic, before he shall have the relief, that he shall offer to put the defendant in *statu quo*. The same insane impulse which may have induced him to make the sale, may have prompted him to waste the consideration money. If he must in all circumstances, account for what he obtained, his mental infirmity, which ought to be interposed as a shield, against the consequences of his folly and improvidence, might and often would be turned, by the designing and unconscientious, to the destruction of his estate.

It is not controverted that a conveyance made by an insane grantor may be rescinded. The terms that should be imposed upon him, depend upon the circumstances of each case, as presented. To apply the principle of the *statu quo* in many instances would produce palpable injustice. Under the benign rule laid down in Loomis v. Spencer, and Fitz-

gerald v. Reed, (*supra.*) full protection will be afforded to the insane; and every demand of him, who deals with him, which in good conscience can be made, is fully met. To what extent return shall be made, can only be known when the facts shall be developed, and an account taken. The case of Gibson v. Loper, 6 Gray Rep., 282; is a direct decision on the point that restitution is not a condition precedent to a recovery of the property conveyed.

Our conclusion is, that if Hughes was insane when he made the conveyance, he is only bound to restore what he received to the extent that it was beneficial to him or his estate; and that it was not necessary to make the offer in his bill. If on account of his weak and debilitated faculties, he was drawn into the conveyance by unfair means, he should restore the price, or its equivalent, then the principle of *statu quo* applies.

In the case of ———— ————, not yet reported, we held that under our statute a party could convey whatever interest he had in real estate, whether in possession or not, or whether adversely held or not.

Upon the whole, we affirm the decree; cause remanded for further proceedings; leave is given to defendants to answer in 30 days from this date.