WHERRY *v.* LATIMER ET AL.

[60 South. 563-642.]

1. EQUITY. *Defendants. Interest. Misjoinder of parties. Demurrer. Cancellation of instrument. Sufficiency of proof. Insurance. Mutual benefit insurance. Change of beneficiary. Undue influence.*

While the joinder of a party as defendant who has no interest in the controversy is improper, yet he is the only one who can take advantage by demurrer of such defect.

2. SAME.

Where a party improperly made a party defendant joins in a general demurrer of his codefendants and the bill as a whole is good against either of the defendants the demurrer will be overruled.

3. CANCELLATION OF INSTRUMENTS. *Pleading. Sufficiency.*

The allegations of mental incapacity and undue influence charged in the bill in this case were sufficient to require an answer on the part of the defendant.

4. MUTUAL BENEFIT INSURANCE. .*Rights of beneficiary.* *Fraudulent charges.*

There is no disability on the part of the original beneficiaries in certificates of a mutual benefit insurance company to maintain a suit to cancel new certificates to other beneficiaries on the ground of undue influence in obtaining same.

5. MUTUAL BENEFIT INSURANCE. *Right to change beneficiaries.*

The holder of a certificate of insurance in a mutual benefit insurance company, has the right to change the beneficiary named therein at pleasure.

6. CONTRACTS. *Undue influence. Degree.*

Capacity to make a contract is implied until overthrown by evidence, and in order to cancel a contract on account of undue influence in its procurement it must be shown that the free agency of the maker was destroyed thereby.

7. SAME.

*Held*, that under the facts as shown in this case the issuance of a new certificate of insurance changing the beneficiary was not obtained by such fraudulent, deceitful or corrupt conduct in the matter as to destroy the free agency of her father, the insured.

ON SUGGESTION OF ERROR.

1. EVIDENCE. *Presumptions. Sanity. Honesty. Contracts. Cancellation.*

The law presumes that every man is sane and honest, that all his acts are dictated by correct motives and are the result of his own independent, intelligent and unaided judgment. It also presumes that all his contracts are valid and were entered into freely and voluntarily in the exercise of an intelligent discretion.

2. SAME.

It never presumes dishonesty, mental incapacity, fraud, undue influence or other matter tending to violate a contract.

3. SAME.

A person seeking to cancel or overturn a contract on the ground of fraud or undue influence must clearly establish by the evidence such fraudulent acts or the exercise of such undue

influence as will violate the contract, or else a state of facts from which the reasonable and natural inference is that the contract was the result of such fraudulent acts or undue influence.

APPEAL from the chancery court of Holmes county. Hon. J. F. McCool, Chancellor.

Suit by Mrs. Norma W. Latimer and others. From a decree for complainants, defendants appeal.

The facts are fully stated in the opinion of the court.

*H. H. Elmore,* attorney for appellant.

*Booth & Pepper,* attorneys for appellee.

No briefs of counsel on either side found in the record.

AMIS, Special Judge, delivered the opinion of the court.

This is an appeal from the chancery court of Holmes county. The appellants were defendants in the court below, and the appellees were complainants there. The admitted facts giving rise to the controversy are these:

In the year 1896 Mr. Samuel Wherry, a citizen of Holmes county, being a member of the Woodmen of the World, and also of the Knights and Ladies of Honor, both mutual benefit insurance orders, applied for and obtained the issuance to him of a beneficiary certificate by each of said orders, payable, in the event of his death while a member in good standing, to all his children, by name, jointly. The certificates were for the sum of two thousand dollars each, and were issued subject to the provisions of the by-laws of the respective orders, which required, among other things, the payment by the member of certain stipulated monthly dues, or assessments, in order to keep the certificate continuously in force, and also reserved to the member the right to change the beneficiary or beneficiaries therein named at pleas-

ure.  The certificates remained in full force and effect
until the 12th day of March, 1908, when Mr. Wherry
surrendered them to the respective orders issuing them,
and requested in writing, in the manner required by their
respective by-laws, the issuance of new certificates in
lieu thereof, payable solely to his daughter, M. J.
Wherry.  The new certificates were accordingly issued,
payable to his daughter, M. J. Wherry, who is otherwise
known as Miss Mollie Wherry, the real defendant in the
court below.  Subsequently on the 28th day of June,
1908, Mr. Wherry, while a member of both orders in
good standing, died testate, and G. C. Reed qualified as
administrator *cum testamento annexo*.

On the 27th day of July, 1908, before the payment of
the amount due on either of said certificates, Mrs. Norma
Latimer, Mrs. Evy Wherry Saxon, Mrs. Cornelia Mur-
phy, Mrs. Ethlyn Jeffers, and G. C. Reed, administrator
*cum testamento annexo*, filed their bill of complaint in
the chancery court of Holmes county against Miss Mollie
Wherry, Mrs. L. C. Wherry, Edgar Wherry, the Wood-
men of the World, and the Knights and Ladies of Honor,
seeking, in effect, the cancellation of the two new cer-
tificates, the restoration of the *status quo* by re-estab-
lishing the original certificates, the rendition of a judg-
ment for the sum of two thousand dollars against each
of said insurance orders, in favor of the beneficiaries
named in said original certificates, and a decree declar-
ing Miss Mollie Wherry a trustee of all moneys collected
by her on account of said certificates, in excess of her
aliquot part thereof, for the benefit of her brother and
sisters.  The complainants, with the exception of G. C.
Reed, administrator, together with the defendants, Miss
Mollie Wherry and Edgar Wherry, were all the bene-
ficiaries named in the original certificate except John
Wherry, who had died on the 7th day of April, 1908, in-
testate, unmarried, and without issue.  Mrs. L. C. Wherry
was the surviving widow of the decedent.

In addition to the foregoing uncontroverted facts, the complainants alleged in their bill, as grounds for relief, "that the said Samuel Wherry, for a space of two or three years prior to the date of his death, was a confirmed invalid, and was forced to undergo many severe, serious, painful, and dangerous operations, in the vain hope of recovering from the effects of chronic diseases and of prolonging his life; that during the last two years of his life he suffered constant physical pain and mental anguish, and was not capable either physically or mentally to transact any matter of business of any kind or character, . . . and sought relief from his physical pain and mental suffering by the constant use of opiates, and became so addicted to the use thereof that he no longer had sufficient will and mental power to resist the habit of seeking relief from pain and suffering by the use of opiates; that during the last two years of his life, in consequence of said physical and mental pain and suffering and the use of opiates, he became a mental and physical wreck, incapable of contracting and being contracted with, nor could he understand nor grasp the meaning or purport of any such contract, but became, as it were, a mere child in the hands of others, and would comply with requests made of him without understanding the meaning or the result thereof; that while the said Samuel Wherry was in this deplorable and pitiable physical and mental condition he was induced and persuaded by the said Miss Mollie Wherry . . . to attempt to change the beneficiaries in said insurance policies . . . and have herself made sole beneficiary therein . . . at a time when her said father was incapable of grasping or understanding the meaning and effect of said attempted change of beneficiaries.

The Knights and Ladies of Honor answer the bill by paying the amount of its certificate into the hands of the clerk of the court, and the Woodmen of the World an-

swered by averring its willingness to pay the amount of its certificate to whomsoever the court might direct. Edgar Wherry made default, and a decree *pro confesso* was entered against him. Miss Mollie Wherry and Mrs. L. C. Wherry jointly demurred on the grounds of want of equity in the bill, lack of jurisdiction of the court, and the misjoinder of Mrs. L. C. Wherry as a party defendant. The demurrer being overruled, they answered the bill, denying all the material allegations thereof. Testimony was taken, the cause submitted, and a final decree was rendered in favor of the complainants.

While it is clear that Mrs. L. C. Wherry had no interest in the controversy, and was therefore improperly joined as a party defendant, yet she was the only person who could take advantage of the defect by demurrer. *Hopson* v. *Harrell,* 56 Miss. 202. If she had demurred separately, her demurrer should have been sustained. But since she joined in the general demurrer of her codefendant, then if the bill, as a whole, was good as against either of them, it was properly overruled. *Washington* v. *Soria,* 73 Miss. 665, 19 South. 485, 55 Am. St. Rep. 555; *Graves* v. *Hull,* 27 Miss. 419. We think that the allegations of mental incapacity and undue influence charged in the bill were sufficient to require an answer on the part of Miss Mollie Wherry. *Hines* v. *Potts,* 56 Miss. 346; *Fitzgerald* v. *Reed,* 9 Smedes & M. 94; *Bates* v. *Hyman,* 28 South. 567; *Ricketts* v. *Joliff,* 62 Miss. 440; *Simonton* v. *Bacon,* 49 Miss. 582. We are also of the opinion that there was no disability on the part of the complainants, as beneficiaries in the original certificates, to maintain the suit on the ground stated in the bill of complaint. 29 Cyc. 124, and cases there cited. Hence it follows that the demurrer was properly overruled.

The more serious question, and the one that has given us the greatest concern, is whether or not the testimony sustains the allegations of the bill, touching the mental incapacity of Mr. Wherry and the undue influence exer-

cised over him by his daughter Mollie at the time of making the change of beneficiary complained of. It *is* clear from the record in this cause, as well as the adjudications of this court, that Mr. Wherry had the right at any time to change the beneficiary in these certificates, and that no one could complain on account of it. *Carson* v. *Bank*, 75 Miss. 167, 22 South. 1, 37 L. R. A. 559, 67 Am. St. Rep. 596. Hence the only questions for determination are whether or not, at the time of making the change, he was mentally capable of knowing and understanding the effect of his act, and also whether, in case he was so mentally capable, the act was induced by the undue and corrupt influence of his daughter Mollie Wherry.

In the case of *Simonton* v. *Bacon*, reported in 49 Miss. at page 582, the complainant, Bacon, as guardian of one Hughes, sought the cancellation of a certain deed of conveyance theretofore executed by Hughes, on the ground of mental incapacity and undue influence, and Justice SIMRALL, in delivering the opinion of the court, at page 588, says: "There may be such imbecility of mind, from whatever cause induced, as *ipso facto* to incapacitate to contract. But a mere suggestion of a weakness of intellect alone is not of itself sufficient to avoid the contract. It must be shown that the other party used some undue means to draw him into the agreement. . . . There are gradations and degrees of mental weakness, as there are of intellectual strength. When the wise and the simple come into contact in business transactions, the inquiry in each instance, looking to all its circumstances, is not whether the bargain to the complaining party was a bad and disadvantageous one, but was he led into it by unfair means, which amount to fraud, deceit, imposition, or circumvention?" In the case of *Burnett* v. *Smith*, reported in 93 Miss .at page 566, and 47 South. at page 117, which was also an attempt to set aside a deed on the ground of mental incapacity and undue in-

fluence, Justice CALHOON, delivering the opinion of the court, says: "There could have been no undue influence, unless it was such as to take away the free agency of Hartzog; and the chancery court found that such was not the case. It must be kept in mind that capacity to make the deed is implied until overthrown by evidence; and we see by reference to 20 Am. & Eng. Ency. of Law (2 Ed.), 105, that not every influence is undue, and undue influence cannot be predicated of any act unless free agency is destroyed, and that influence exerted by means of advice, arguments, persuasions, solicitation, suggestion, or entreaty is not undue, unless it be so importunate and persistent, or otherwise so operate, as to subdue and subordinate the will and take away its free agency. Nor is influence ordinarily considered undue which arises out of sympathy, kindness, attention, attachment, or affection, gratitude for past services, desire of gratifying the wishes of another, or of relieving distress, claims of kindred and family or other intimate personal relations, love, esteem, social relations, prejudices, or flattery." And again in the course of the same opinion he says: "A man of sound mind may execute a will or a deed from any sort of a motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice, or even a whim or a caprice . Under the circumstances of this case, it occurs to us as quite natural that Hartzog should prefer his youngest child, a daughter, who had always been with him, and the mere fact that there was no recognition in the deed of his other children, who were of middle age and settled in life, could not be held to a presumption of undue influence or a lack of free agency."

Applying the principles announced in these cases to the facts as disclosed by the record in this case, we find that for more than two years prior to the date of his death Mr. Wherry was in a very poor state of health, that he had to undergo several surgical operations, which

were never of any permanent benfit, that he suffered much pain when not under the influence of an opiate, and became so addicted to the use thereof that he was unable to resist the habit. But it is equally clear that he was not insane, nor in any way mentally deficient, except on a few occasions, when suffering from septic poisoning incident to the progress of the disease from which he suffered, and that these fits of mental derangement were only temporary in character, and passed away as soon as the poison was drained off or counteracted. His close neighbors and immediate friends, who visited him frequently and who knew him well, both before and after his affliction, and who conversed with him on all sorts of topics, the physician who treated him and saw him and talked with him under the most trying circumstances— persons who have no possible interest in the litigation— were unable to discover any mental derangement or weakness of mind in him whatever until about a week before his death. During the last year of his life he controlled and directed his farming operations, made settlements with the laborers, superintended the sale of the products of his farm, and received the pay therefor, borrowed money on a life insurance policy, sold a farm owend by himself and his wife for twenve thousand dollars, made a settlement with her as to the division of the proceeds, and applied his part of it to the payment of his debts, discussed business affairs with his son-in-law, Mr. Latimer, and his banker, Mr. Murphy, conducted a bank account and drew checks against it, selected and purchased farming implements, made settlements of business transactions with his neighbors in which he made all the calculations, and in fact conducted and carried on continuously, until about a week before his death, all sorts of business transactions that any other man of his station in life would have coming before him; and this, too, without even so much as a hint in the record that he was overreached or defrauded in a single one of these

transactions, or that he was in any may mentally incapable of attending to these affairs. On the other hand, it appears that he managed affairs as well as any other man would, and that those who came in contact with him had great respect for his judgment. For some time prior to his death he was hard pressed for money, and was not in a financial condition to pay the monthly dues or assessments on the certificates in question. He had spoken to his son-in-law, Mr. Murphy, and some of his children, about the matter, and told them that he was unable to pay the assessments on these certificates, and that the children would have to take care of the matter among themselves, and Miss Mollie was the only one of them who undertook to relieve him of this financial strain by paying his dues and keeping the certificates in force for several months prior to the date of the change of beneficiary. There is no sufficient showing in the record upon which to base the conclusion that Miss Mollie Wherry was guilty of any such fraudulent, deceitful, or corrupt conduct in the matter as to destroy the free agency of her father. What she did was to assume a financial burden which had grown too heavy for him to carry, at a time when no change of beneficiary had been made, and later to request him to give her the benefit of that which she had saved, on condition that she continue to carry the burden.

We are not unmindful of the repeated adjudications of this court as to the effect of the finding of the chancellor on questions of fact; but repeated examinations of this record have only served to strengthen our conviction that the decree of the court below is erroneous, for the reason that under the testimony in the record the complainants in the court below were not entitled to any relief whatever.

From these views, it follows that the decree of the court below must be reversed, and cause remanded.

*Reversed and remanded.*

COOK, J., takes no part in the decision of this case.

ON SUGGESTION OF ERROR OVERRULED.

For former opinion, see 60 South. 563.

AMIS, Special Judge.

The law presumes that every man is sane and honest; that all his acts are dictated by correct motives, and are the result of his own indepedent, intelligent, and unaided judgment. It also presumes that all his contracts are valid, and where entered into freely and voluntarily in the exercise of an intelligent discretion. It never presumes dishonesty, mental incapacity, fraud, undue influence, or any other matter tending to vitiate a contract; but always requires proof of facts from which such dishonesty, mental incapacity, fraud, undue influence, or other matter may be reasonably inferred. And, whenever any person seeks to cancel or overturn a contract on the ground of fraud or undue influence, he must clearly establish by his testimony such fraudulent acts or the exercise of such undue influence as will vitiate the contract, or else a state of facts from which the reasonable and natural inference is that the contract was the result of such fraudulent acts or undue influence

In this case there was as a matter of fact an actual change of beneficiary, and the effort of the appellees was to cancel the new certificate showing such change, on the ground of the mental incapacity of the decedent and the undue influence of his daughter, Mollie, and to reinstate the original certificates in favor of all the children. In such case the burden was on the appellees to clearly establish by testimony, either the total mental incapacity of the decedent, or the actual exercise of such undue and corrupt influence as to take away his free agency, or else a state of facts from which such undue influence would be reasonably and naturally inferred.

The testimony not only fails utterly to establish the total mental incapacity of the decedent, but clearly shows the exact converse of the proposition. Nor is there any direct testimony in the record showing the exercise of any such undue or corrupt influence over the mind of the decedent as to destroy his free agency. It is true that Miss Mollie was his nurse and administered to him the opiates, which it seems he required; but there is no proof that she gave him an overdose at the time of making the change. In fact, the record established the exact converse. In addition to her own denial of it, the testimony of every witness who testified about the matter is that when he was in "these poisoned states," or had an overdose of opiates, he went to sleep, wanted to be let alone, and did not remember anything that happened afterward. Now, the proof is abundant that he did remember all about this transaction, because he mentioned it to members of his family on several occasions afterward. Nor does the testimony show that he was under the domination and control of anyone, but that, on the contrary, he managed and controlled his own affairs in spite of his physical infirmities.

The remaining question is, Does the record establish a state of facts from which fraud or undue influence may reasonably and naturally be inferred? We think not. The decedent had paid the assessments on these certificates for many years for the benfit of all his children. His physical infirmities had curtailed his earning powers, and he was short of money. In this situation he told his children that they would have to pay the assessments, as he was not able to do so. Exactly when this was done does not appear, but it seems to have been discussed by some of them as early as October, 1907. Nothing seems to have been agreed on among them, and the decedent decided to discontinue paying the assessments. Thereupon the appellant paid the assessments herself from that time until his death. Now, when this was made known

to the decedent, is it strange that he made the change of
beneficiary? We think not. The laborer is worthy of
his hire, and he that bears the burden is justly entitled
to the reward that it brings.

*Suggestion overruled.*