MORRIS *v.* MORRIS *et al.*

(In Banc. Feb. 23, 1942. Suggestion of Error Overruled April 13, 1942.)

[6 So. (2d) 311. No. 34818.]

Patterson & Patterson, of Calhoun City, and A. M. Mitchell, of Pontotoc, for appellant.

W. J. **Evans** and **Paul M. Moore**, both of Calhoun City, and **C. A. Bratton**, of Oxford, for appellees.

**Smith, C. J.,** delivered the opinion of the court.

N. W. Morris, deceased, left a will which was probated ex parte. Afterwards his children other than the appellant herein contested its validity under Section 1609 of

the Code. By agreement the case was submitted to and tried by the court below without a jury, resulting in a decree for the contestants. The complaints of the contestants are that the testator was without mental capacity to make the will and was caused to make it by undue influence exerted over him by the beneficiary therein. The court below held that the testator was of sound and disposing mind and memory but that the will was the result of undue influence exerted over him by the beneficiary therein.

The testator became a widower in July, 1931, when he was over seventy years of age, and shortly thereafter was taken by his son, H. L. Morris, into his home, where he remained without being charged anything therefor until his death in 1937. In November, 1933, he executed this will, by which he devised all of his property to his son, H. L. Morris. His property consisted of a farm containing sixty odd acres of land, a time deposit of $1500 in a bank in Water Valley, and another deposit in his checking account in the same bank, the latter amount being afterwards withdrawn and disposed of by him. The farm was shortly thereafter sold by him for $345, which he turned over to the beneficiary in this will, H. L. Morris, who claims that it was partly in settlement of a debt due him by his father. The $1500 time deposit was all the property owned by the testator at his death. He was very fond of Mrs. H. L. Morris, who waited on him to the extent of doing his laundry, and also of H. L. Morris' children. When he made the will he had several children, including the appellant, all of whom were adults with their own homes and families, and in no way dependent on the testator for support. While some of them are shown to have expressed to their father a willingness for him to live with them, there is no evidence that any of them, except the appellant, insisted that he so do.

The appellant lived on a farm some distance from Water Valley. On the day the will was executed he carried the testator, at his request, to Water Valley and asked a

mutual and old friend of both to recommend a lawyer for the drafting of some papers wanted by his father. This friend recommended Mr. R. F. Kimmons, and accompanied the testator to his office, the appellant not going with them. Kimmons drafted the will in accordance with testator's wishes and aided him in having it properly witnessed. The testator's other children knew nothing of the making of this will until after their father's death. It will not be necessary to set forth the other evidence in the case and it will be sufficient to say that there was no direct evidence that the beneficiary in the will had acquired or here exercised an overpowering influence over the testator, the evidence relied on therefor being wholly circumstantial.

We are not called on to determine the weight that could be given to this evidence, for assuming that the making of the will was influenced by the beneficiary therein this influence cannot be here held to have been undue within the legal definition thereof. As used in determining whether the maker of an instrument affecting his and others' rights has been wrongfully induced to make it, the popular meaning of the word "undue" in the phrase "undue influence" is much restricted and denotes "something wrong, according to the standard of morals which the law enforces in the relations of men, and therefore something legally wrong, something, in fact, illegal. . . . The nature of the influence can be judged only by its result. It is the end accomplished which colors the influence exerted, and entitles us to speak of it as wrongful, fraudulent, or undue, on the one hand, or as proper or justifiable on the other hand. . . . We are to understand the word 'undue' as describing not the nature or the origin of the influence existing, nor as measuring its extent, but as qualifying the purpose with which it is exercised or the result which it accomplishes. . . . To induce a man to do that which he ought to do, or that which accords with justice, cannot be condemned by the law, no matter how the influence brought to bear upon his

mind was acquired or how strenuously it was exerted.'' 1 Black on Rescission & Cancellation, Section 240. Quoted and approved in Gillis v. Smith, 114 Miss. 665, 75 So. 451. See also, Wherry v. Latimer, 103 Miss. 524, 60 So. 563, 642; and Burnett v. Smith, 93 Miss. 566, 47 So. 117; cf. Simonton v. Bacon, 49 Miss. 582.

That the testator should desire to compensate his son and his son's wife for their care and attention to him was most natural and so to do was undoubtedly in accord with justice. The amount of the testator's estate was by no means excessive for that purpose and had any substantial distribution therefrom been made to his other children the remainder would have been insufficient for such compensation. If the appellant induced this testator to make this will, he did no injustice thereby either to the testator or his other children.

The closing language of this court's opinion in Burnett v. Smith, supra, applies, mutatis mutandis, here. The will in that case was to the testator's daughter to the exclusion of his other children, and the court [93 Miss. 566, 47 So. 118] said:

''Under the circumstances of this case, it occurs to us as quite natural that Mr. Hartzog should prefer his youngest child, a daughter who had always been with him, and the mere fact that there was no recognition in the deed of his other children, who were of middle age and settled in life, could not be held to be a presumption of undue influence or a lack of free agency.''

Reversed and decree here for appellant.